IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FRANKIE HORA, *et al.*,  :

     Plaintiffs,

                   Case No. 3:18-cv-344

    v.              :

RICK RISNER, *et al.*,        JUDGE WALTER H. RICE

     Defendants.     :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY
DEFENDANTS PERRY TOWNSHIP, MONTGOMERY COUNTY, OHIO,
STEPHEN NELSON, WILLIAM WORTMAN, TRUSTEE DALE
EDWARD SEIM, AND THE PERRY TOWNSHIP POLICE
DEPARTMENT (DOC. #30)

---

Plaintiffs Frankie Hora, Mary Hora, and Tukens, LLC, d/b/a Tukens Farm

Market, filed suit against their neighbor Rick Risner, Perry Township, and Perry

Township employees Stephen Nelson and William Wortman. Plaintiffs seek relief

under 42 U.S.C. § 1983, for alleged violations of their Fourth, Fifth, Sixth and

Fourteenth Amendment rights. They also bring a state law claim of "emotional

distress."

This matter is currently before the Court on a Motion for Judgment on the

Pleadings filed by the Perry Township Defendants—Perry Township, Stephen

Nelson and William Wortman (hereafter "Defendants"), joined in by Trustee Dale

Seim, Montgomery County and the Perry Township Police Department. Doc. #30.

## I.    Background and Procedural History

Plaintiffs Frankie and Mary Hora own and operate the Tukens Farm Market, located on Eaton Pike Road, in West Alexandria, Ohio. The property is located in Perry Township. On October 20, 2017, Rick Risner, who owns the adjacent property, contacted the Perry Township Police Department, alleging that signs advertising the farm market were wrongfully located on his property. Officer Stephen Nelson, of the Perry Township Police Department, was dispatched and took Risner's statement. Nelson then allegedly researched the property boundaries and determined that Risner was correct. According to the Amended Complaint, Nelson then reported his findings to William Wortman, his supervisor in the Police Department, who authorized trespass charges to be pursued against the Horas.

The next day, Officer Nelson went in uniform to the Tukens Farm Market to discuss Risner's complaint about the location of the signs. In the presence of customers, the officer demanded to speak to Mr. Hora, who came in from the fields. Officer Nelson explained the reason for his visit. Mr. Hora and Officer Nelson then proceeded to the location of the signs. Hora insisted that the signs were on his own property, and pointed out two posts that showed the location of the property boundary. He also explained to Officer Nelson that the signs had been in the same place for 14 years.

Officer Nelson nevertheless told Mr. Hora that, if he did not immediately remove the signs, he would be arrested for trespassing. Nelson also told him that he would be arrested if he again entered onto Mr. Risner's property. In light of

2

these threats, Mr. Hora removed the signs. He then had a boundary survey completed, which confirmed his belief that the signs had been located on his own property. Hora submitted these survey results to Perry Township. He asked that the records regarding his property boundary, and the records of the investigation, be corrected, and that Risner be informed of the true property boundaries. He does not believe that the Township took any remedial action, given that Risner continues to assert ownership of this portion of Plaintiffs' property.

On October 19, 2018, the Horas, along with Tukens, LLC, filed suit against Rick Risner, Perry Township, Stephen Nelson and William Wortman. Doc. #1. An Amended Complaint, filed on November 15, 2019, Doc. #26, seeks relief under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' Fourth, Fifth, Sixth, and Fourteenth Amendment rights. It also includes a state law claim of "emotional distress." The Perry Township Defendants have filed a Motion for Judgment on the Pleadings, Doc. #30, seeking dismissal of all claims brought against them.

## II.  Fed. R. Civ. P. 12(c)

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if

3

the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are formulaic recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

4

## III.   Analysis

### A.   Perry Township Trustee Dale Seim, Montgomery County Prosecutor's Office, and Perry Township Police Department

When Plaintiffs filed their Amended Complaint, they also sent "Notice" to

Perry Township Trustee Dale Seim, the Montgomery County Prosecutor's Office,

and the Perry Township Police Department.  Although these entities are listed in

the caption, Doc. #26, PageID#139, the Amended Complaint contains no

allegations of wrongdoing by any of them.  On this basis, Defendants argue that,

to the extent that Plaintiffs are attempting to sue these entities, they have failed to

state a claim upon which relief may be granted.  In response, Plaintiffs admit that

they are not asserting claims against any of these entities.  Doc. #34,

PageID#214.  Given that this individual and these entities have not been named as

party defendants, and that the Perry Township Police Department is not *sui juris*,

the Court need not address this issue.

### B.   Section 1983 Claims (Counts I-IV)

In Counts I through IV of the Amended Complaint, Plaintiffs seek recovery

under 42 U.S.C. § 1983 for violations of their constitutional rights.  Section 1983

"'is not itself a source of substantive rights,' but merely provides 'a method for

vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S.

386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

In order to recover under § 1983, a plaintiff must prove that a defendant, while

acting under color of state law, violated rights secured by the Constitution or laws

of the United States. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Here, it is undisputed that, at all relevant times, Stephen Nelson, William Wortman and Perry Township were acting under color of state law. At issue is whether Plaintiffs have stated a plausible constitutional violation.

### 1. Fifth and Sixth Amendment Claims (Counts II and III)

In their Motion to Dismiss, Defendants argue that Count II, alleging a violation of the Fifth Amendment's Due Process Clause, must be dismissed because the Fifth Amendment applies only to the federal government, *Bybee v. City of Paducah*, 46 F. App'x 735, 737 (6th Cir. 2002), and Plaintiffs have not alleged that Defendants are federal government employees. By failing to address this argument, Plaintiffs impliedly concede that this claim fails on the merits. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion.").

Likewise, Defendants argue that Count III, alleging a violation of the Sixth Amendment must be dismissed because the Sixth Amendment is not implicated unless a citizen is charged with a crime. *See e.g., Illinois v. Perkins*, 496 U.S. 292, 299 (1990). The Amended Complaint expressly states that no criminal charges were ever filed against any of the Plaintiffs. Doc. #26, PageID#144. Again, Plaintiffs impliedly concede that this claim fails on the merits.

6

The Court concludes that Plaintiffs have failed to state plausible violations of the Fifth and Sixth Amendments. Accordingly, the Court DISMISSES Counts II and III of the Amended Complaint WITH PREJUDICE.

## 2. Fourth and Fourteenth Amendment Claims (Counts I and IV)

The Court turns now to the two § 1983 claims that are in dispute, Counts I and IV, alleging violations of the Fourth and Fourteenth Amendments respectively. The Court will first address the claims brought against Nelson and Wortman, and then the claims brought against Perry Township.

### a. Official Capacity Claims

Nelson and Wortman were sued in their individual and official capacities. As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159 (1985), an individual-capacity suit seeks to impose personal liability on a government official for actions taken under color of state law. An official-capacity suit, however, is the equivalent of an action against the governmental entity of which the officer is an agent. *Id.* at 165.

Because the official-capacity claims against Nelson and Wortman are duplicative of the claims brought against Perry Township, they will be DISMISSED WITH PREJUDICE on that basis. *See Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996) (affirming district court's dismissal of official capacity claims against school officials as duplicative of claims against county). The Court will address the claims brought against Perry Township later in this Decision and Entry.

#### b. Individual Capacity Claims

Nelson and Wortman argue that they are entitled to qualified immunity on the § 1983 claims asserted against them in their individual capacities. The doctrine of qualified immunity shields government officials from liability for civil damages for actions taken in the scope of their duties, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The doctrine operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). After a defendant raises a claim of qualified immunity, the plaintiff bears the burden of rebutting it. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

To determine whether Nelson and Wortman are entitled to qualified immunity, the Court must consider: (1) whether, taken in the light most favorable to the plaintiff, "a constitutional right would have been violated on the facts alleged"; and (2) whether the right at issue was "clearly established." *Saucier,* 533 U.S. at 201. These questions need not be considered in order. *Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009). If the answer to either inquiry is "no," the government officials are entitled to qualified immunity.

The Court must conduct this qualified immunity analysis with respect to both of the remaining § 1983 claims asserted against Nelson and Wortman.

### (i) Fourth Amendment

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Count I of the Amended Complaint alleges that Officer Nelson "took possessory control over the Plaintiffs' Property when he ordered . . . that the Signs be taken down and removed at the Property," and that Nelson "took control over Mr. Hora's person when he threaten[ed] him with arrest." Doc. #26, PageID#145. Plaintiffs further allege that these acts "were undertaken at the direction and with consent of Wortman while a police supervisor for Perry Township." *Id.* at PageID#146.

It appears that Plaintiffs have now abandoned any claim that there was an unreasonable seizure of *property* given that they failed to defend against Defendants' argument that Plaintiffs failed to state a plausible claim. In terms of qualified immunity on Count I, the Court will therefore limit its inquiry to the question of whether, based on the facts alleged, Mr. Hora was "seized" within the meaning of the Fourth Amendment and, if so, whether that seizure was unreasonable. Defendants argue that the conduct alleged in the Amended Complaint does not amount to a "seizure." The Court agrees.

A "seizure" may occur even without a "technical arrest."  *Terry v. Ohio*, 392 U.S. 1, 19 (1968).  Nevertheless, "not every encounter between a civilian and the police constitutes a 'seizure' invoking fourth amendment safeguards."  *United States v. Taylor*, 956 F.2d 572, 575 (6th Cir. 1992).  "The Fourth Amendment does not apply to consensual encounters with the police. Rather, the 'safeguards of the Fourth Amendment, with respect to police/citizen contact, vest only after a citizen has been seized.'"  *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (quoting *Smoak v. Hall,* 460 F.3d 768, 778 (6th Cir. 2006)).

A person is considered to be "seized" only when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  Such conduct might include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  *Id.*  In *Florida v. Bostick*, 501 U.S. 429 (1991), the Supreme Court stated, "[o]ur cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions . . . . Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Id.* at 434 (internal quotation omitted).

Based on the facts alleged in this case, the Court finds that Plaintiffs have failed to state a plausible claim that Mr. Hora was "seized" within the meaning of

the Fourth Amendment.  They allege that Officer Nelson arrived in uniform and demanded in a loud voice to speak to Mr. Hora.  Mr. Hora came in from the adjacent fields to meet with him.  The two of them then "proceeded to the location of the Signs at which time Nelson advised Mr. Hora that Signs were on Mr. Risner's Property."  Doc. #26, PageID#143.  Mr. Hora, pointing out two landmarks showing the property boundaries, explained why he believed that the signs were on his own property.  Nevertheless, Officer Nelson informed Mr. Hora that "if the Signs were not immediately removed[,] he would be arrested for trespassing."  *Id.* In light of this threat, Mr. Hora agreed to remove the signs.

Standing alone, verbal threats of arrest do not support a constitutional claim. *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003).  *See also Schuler v. Village of Newcomerstown*, No. 5:16-cv-1466, 2017 WL 1199170, at *5 (N.D. Ohio Mar. 31, 2017) ("Mere words, even spoken threats of serious harm or arrest, however, do not constitute an infringement of a constitutional right and are not actionable under § 1983.").

There is no "seizure" unless the officer's conduct "somehow restricts the subject's physical liberty."  *Ewolski v. City of Brunswick*, 287 F.3d 492, 507 (6th Cir. 2002).  *See also United States v. Baker*, 254 F. Supp. 2d 768, 773 (S.D. Ohio 2003) (holding that there was no "seizure" where no one told suspect that he was not free to move about his house, no weapons were drawn or displayed, and he was not restrained by means of physical force or show of authority).

11

Plaintiffs do not allege that Officer Nelson in any way restrained Mr. Hora's physical liberty by means of physical force or a show of authority. Although Officer Nelson allegedly demanded "in a loud voice" to speak to Mr. Hora, their interactions never rose above the level of a consensual encounter. Mr. Hora voluntarily came in from the fields to speak to him. Plaintiffs do not allege that Officer Nelson displayed his weapon at any time, made any physical contact with Mr. Hora, or forced him to accompany him to the location of the signs. Although Nelson allegedly threatened to arrest Mr. Hora for trespassing if he did not remove the signs, this threat is insufficient to constitute a "seizure" within the meaning of the Fourth Amendment. *Thacker*, 328 F.3d at 258.

Based on the foregoing, the Court finds that, based on the facts alleged, Officer Nelson did not violate Mr. Hora's Fourth Amendment right to be free of unreasonable "seizures." Officer Nelson is therefore entitled to qualified immunity on this claim.

William Wortman is likewise entitled to qualified immunity on this claim. Plaintiffs allege that Nelson acted at the direction and with the consent of his supervisor, William Wortman. However, because Officer Nelson did not "seize" Mr. Hora within the meaning of the Fourth Amendment, supervisory liability cannot attach to William Wortman with respect to this claim. *See McQueen v. Beecher Cmty. Schs.,* 433 F.3d 460, 470 (6th Cir. 2006) ("a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the

supervisor."); *S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trustees*, 771 F.3d 956, 963 (6th Cir. 2014) (same).

On this basis, the Court SUSTAINS Defendants' Motion for Judgment on the Pleadings on Count I with respect to the claims brought against Stephen Nelson and William Wortman in their individual capacities.

#### (ii) Fourteenth Amendment

The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The procedural due process portion of this constitutional guaranty requires that, when a significant property interest is at stake, "the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation omitted).

The Court has previously construed Count IV of the Amended Complaint as asserting a violation of the Fourteenth Amendment's procedural due process protections. The Court found that, reading the Amended Complaint as a whole, Plaintiffs allege that they were deprived of the use of their personal property, *i.e.*, the signs advertising the farm market, without notice and a meaningful opportunity to be heard.[1]

---

[1] The fact that Plaintiffs have abandoned their Fourth Amendment claim with respect to the seizure of the signs is not fatal to their Fourteenth Amendment due process claim. The issue of whether a seizure of property is unreasonable under

The threshold issue with respect to this claim is whether the law-of-the-case doctrine mandates denial of Defendants' Motion for Judgment on the Pleadings. "Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016). It applies "only to issues that have been decided explicitly (or by necessary implication) by a court." *Bowles v. Russell*, 432 F.3d 668, 676-77 (6th Cir. 2005). The law-of-the-case doctrine, however, is discretionary, and it does not constrain the court from reconsidering a prior clearly-erroneous ruling. *Id.* at 677.

In sustaining Plaintiffs' Motion for Leave to File Amended Complaint, the Court noted that a proposed amendment is futile if it would not survive a Rule 12(b)(6) motion to dismiss. Doc. #25, PageID#133. The Court rejected Defendants' claim that the proposed amendment would be futile, at least with respect to Plaintiffs' Fourteenth Amendment procedural due process claim. *Id.* at PageID##134-36.

Citing the law-of-the-case doctrine, Plaintiffs argue that, because the same standard governs both issues, the Court's previous decision on the question of futility precludes a finding that Plaintiffs have failed to state a plausible due process violation. They further argue that, in holding that the proposed

_____

the Fourth Amendment is clearly distinguishable from the issue of whether deprivation of that property violated the owner's procedural due process rights.

14

amendment would not be futile, the Court also impliedly determined that Nelson and Wortman are not entitled to qualified immunity on this claim.

As a general rule, the Court agrees that, because the standard is the same, a finding that a proposed amendment would not be futile equates to a finding that Plaintiffs have stated a plausible claim for relief. *See, e.g., Firestone v. Berrios*, 42 F. Supp. 3d 403, 412-13 (E.D.N.Y. 2013) (holding that, under the law-of-the-case doctrine, a prior decision granting a motion for leave to amend the complaint precluded the court, on a motion for judgment on the pleadings, from reanalyzing whether plaintiff had stated a valid cause of action).

The Court, however, rejects Plaintiffs' argument that, in determining that the proposed amendment would not be futile, the Court also impliedly decided the question of qualified immunity. Qualified immunity is an affirmative defense, and Plaintiffs are not required to plead facts to refute it. *See Siefert v. Hamilton Cty.*, 951 F.3d 753, 761 (6th Cir. 2020) ("Federal Rule of Civil Procedure 8(a) requires only that a plaintiff *state* a claim, not that a plaintiff show that he can overcome an affirmative defense.").[2]

In determining whether Plaintiffs should be granted leave to amend, the Court looks only to the allegations in the proposed amended complaint to see if they state a plausible claim for relief. Although this analysis undoubtedly touches

---

[2] In *Siefert*, the Sixth Circuit noted its "general preference" for deciding qualified immunity issues in the context of a motion for summary judgment rather than a motion to dismiss. 951 F.3d at 761-62.

on the first prong of the qualified immunity analysis, *i.e.,* whether, based on the facts alleged, a constitution violation occurred, it does not reach the second prong of the qualified immunity analysis, *i.e.,* whether the law was clearly established. Accordingly, the law-of-the-case doctrine does not necessarily prevent the Court from granting Defendants' Motion for Judgment on the Pleadings with respect to the Fourteenth Amendment procedural due process claim.

The first step in the qualified immunity analysis is to determine whether, based on the facts alleged, Nelson and/or Wortman, violated Plaintiffs' procedural due process rights.  "To state their procedural due process claim, Plaintiffs must establish three elements: (1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019).

Property interests are not created by the Constitution, but arise from state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  It appears to be undisputed that Plaintiffs have a protected property interest in the signs used to advertise their farm market.  Ohio permits outdoor advertising "in all districts zoned for industry, business, or trade, or lands used for agricultural purposes." Ohio Rev. Code § 519.20.  Plaintiffs have also adequately alleged that they were deprived of that property interest when Officer Nelson ordered them to immediately take down the signs.  Doc. #26, PageID#148.

16

The next question is whether Plaintiffs have stated a plausible claim that
Defendants deprived them of this property interest without pre-deprivation notice
and a meaningful opportunity to be heard. *Warren v. City of Athens*, 411 F.3d
697, 709 (6th Cir. 2005).[3]  Plaintiffs allege that when Officer Nelson told Mr. Hora
that the signs were on Mr. Risner's property, Mr. Hora told Officer Nelson why he
disagreed.  Hora pointed out the specific landmarks that he believed defined the
property boundary.  Defendants maintain that these factual allegations establish
that Hora was, in fact, given an opportunity to be heard concerning the property
line dispute before being ordered to remove the signs.

The Court disagrees. The fact that Hora verbally protested when Officer
Nelson accused him of placing signs on Risner's property does not necessarily
satisfy due process requirements.  In determining what process is owed, the court
applies the three-part balancing test set forth in *Mathews v. Eldridge*: (1) "the
private interest that will be affected by the official action;" (2) "the risk of an
erroneous deprivation of such interest through the procedures used, and the
probable value, if any, of additional or substitute procedural safeguards;" and (3)
"the Government's interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute procedural requirement
would entail." 424 U.S. 319, 335 (1976).

_____

[3]   Plaintiffs have not alleged that the deprivation resulted from a "random and
unauthorized act" resulting in a loss for which post-deprivation remedies would be
inadequate. *See Warren*, 411 F.3d at 709.

Here, it could be argued that, at the very least, due process required that, before Plaintiffs were forced to remove the signs, they be given the opportunity to hire a surveyor and present evidence to support their claim that the signs were not on Mr. Risner's property.  Based on the foregoing, the Court finds that the allegations in the Amended Complaint are sufficient to state a plausible procedural due process claim against Officer Nelson.

Plaintiffs' allegations are also sufficient to state a plausible procedural due process claim against William Wortman.  Although Wortman cannot be held liable on a *respondeat superior* basis for Nelson's allegedly unconstitutional conduct, he may be held liable if he himself "participated, encouraged, authorized or acquiesced in" the offending conduct.  *Doe ex rel. Doe v. City of Roseville,* 296 F.3d 431, 440 (6th Cir. 2002).  Here, Plaintiffs allege that Wortman was Nelson's supervisor and that Nelson's conduct was "undertaken *at the direction and with consent of* Wortman."  Doc. #26, PageID##140, 146 (emphasis added).

The next step in the qualified immunity analysis is to determine whether the law was clearly established such that reasonable government officials standing in the shoes of Nelson and Wortman would have known that their conduct—in ordering the Horas to remove the signs prior to notice and a hearing—was unconstitutional.  *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) ("a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.").

18

In determining whether the right is clearly established, the court looks "first to decisions of the Supreme Court," then to Sixth Circuit cases and "decisions of other courts within the circuit, and then to decisions of other Courts of Appeal." *Andrews v. Hickman Cty.*, 700 F.3d 845, 853 (6th Cir. 2012). Although the conduct at issue in those cases need not be identical, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). *See also Baker v. Union Twp.*, 587 F. App'x 229, 233 (6th Cir. 2014) (noting that the right at issue should not be defined at "a high level of generality," but neither should it be defined so narrowly to require the "circumstances of the alleged violation" to be "identical to cases already decided.").

In this case, the Court finds that the relevant law was clearly established at the time the incident occurred.  Plaintiffs cite to *Hannah v. Larche*, 363 U.S. 420, 442 (1960) for the general proposition that, in making binding determinations directly affecting the legal rights of individuals, the government must allow individuals "the procedures which have traditionally been associated with the judicial process."

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), cited in this Court's Decision and Entry Sustaining Plaintiffs' Amended Motion for Leave to File Amended Complaint, Doc. #25, PageID##135-36, is perhaps more instructive given the similarity of facts.  It involved a dispute between Laurie Latshaw and Mark Abbott, her ex-husband, over ownership of a van.  After inspecting a

19

certificate of title and other documents shown to him by Latshaw, Constable

Albert Diehl determined that Latshaw was entitled to possession of the vehicle.

He then approached Abbott, who refused to turn over the keys, insisting that he

had paid for the van and had driven it for seven years.  He told Diehl that he had a

bill of sale at home that would prove that he owned it.  Diehl, however, refused to

let him go home to get that document, and threatened to arrest him if he drove off.

Other officers arrived on the scene and gave Latshaw immediate possession of the

van.

 Abbott then filed suit against the officers, alleging procedural due process

violations.  The district court granted summary judgment in favor of Diehl on

qualified immunity grounds.  The Third Circuit reversed, holding that "Abbott has a

strong claim against Diehl for violating his right to procedural due process by failing

to give him advance notice and an opportunity to be heard prior to Latshaw's

seizure of the van."  161 F.3d at 147.

On the qualified immunity issue, the Court held that "the applicable law

regarding procedural due process was 'clearly established' at the time of the

alleged violation of Abbott's rights. As we noted earlier, the Supreme Court's 1972

decision in *Fuentes* held that due process protects possessory interests in property.

407 U.S. at 87, 92 S.Ct. 1983."  *Id.* at 148.  The Court continued:

> At the heart of *Fuentes* is the principle that it is not for law
> enforcement officers to decide who is entitled to possession of
> property. Rather, it is the domain of the courts, and citizens are to
> have a meaningful opportunity to be heard as to their rights before
> they are finally deprived of possession of property. Diehl's curbside

20

> courtroom, in which he decided who was entitled to possession, is
> precisely the situation and deprivation of rights to be avoided. . . . In
> his single-minded reliance on Latshaw's documentation, Diehl rode
> roughshod over *Fuentes* and ignored the broader context of the
> seizure which militated against the legality and reasonableness of his
> hasty conclusion that Latshaw, not Abbott, was entitled to immediate
> possession of the van. An official familiar with the facts then known
> and the law then applicable would have reasonably believed that his
> conduct was violating clearly established law.

*Id.* at 149.

This case is factually similar. Officer Nelson investigated Rick Risner's

complaint about the location of the signs and determined that they were improperly

located on Risner's property. He then approached Mr. Hora to confront him with

Risner's claim. Hora explained that the signs had been located in the same place

for fourteen years, and he showed Officer Nelson the landmarks demarcating the

property boundaries. Nelson nevertheless demanded that Hora remove them

immediately or face arrest. As in *Abbott*, "[a]n official familiar with the facts then

known and the law then applicable would have reasonably believed that his

conduct was violating clearly established law." *Id.* at 149.[4]

---

[4] Defendants argue they are entitled to qualified immunity because Officer Nelson
researched the property boundaries before approaching Mr. Hora and, even if
Nelson's conclusion was incorrect, it was a reasonable mistake. The relevant
question, however, is not whether Nelson made a reasonable mistake in
determining the property boundaries. The relevant question is whether he made a
reasonable mistake in ordering Hora to remove the signs without giving him notice
and a meaningful opportunity to be heard.

The Court concludes that Officer Nelson and William Wortman are not entitled to qualified immunity on Plaintiffs' Fourteenth Amendment procedural due process claim. Accordingly, the Court OVERRULES Defendants' Motion for Judgment on the Pleadings concerning Count IV of the Amended Complaint brought against Nelson and Wortman in their individual capacities.

### 3.  Claims Against Perry Township

The Court turns next to the claims brought against Perry Township. Given the Court's finding that Plaintiffs failed to state a plausible claim of violations of their Fourth, Fifth, or Sixth Amendment rights, it is axiomatic that Perry Township cannot be held liable on Counts I, II or III. The only question is whether Plaintiffs have stated a plausible § 1983 claim against Perry Township stemming from the alleged Fourteenth Amendment procedural due process violation.

A governmental entity, like Perry Township, cannot be held liable under § 1983 merely because it employs an individual who engages in unconstitutional conduct. Rather, a plaintiff must prove that a policy or custom of the governmental entity was the "moving force" behind the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' — that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986).

A policy or custom giving rise to municipal liability may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken

by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005).

As an initial matter, the Court rejects Plaintiffs' claim that the law-of-the-case doctrine precludes dismissal of the due process claim against Perry Township. Although the Court previously held that Plaintiffs had stated a plausible Fourteenth Amendment procedural due process claim, Doc. #25, PageID##135-36, the Court did not specifically decide whether Plaintiffs' allegations were sufficient to trigger Perry Township's liability, and no such holding is implicit in that decision.

Plaintiffs attempt to impose municipal liability under two theories: (1) actions taken by officials with final decision-making authority; and (2) official agency policies. The allegations contained in the Amended Complaint are insufficient to support the first theory. Although the Amended Complaint alleges that Wortman was Nelson's supervisor, Doc. #26, PageID##140-41, Wortman's exact title is not identified, and Plaintiffs do not allege that Wortman had final decision-making authority. *See Pembaur*, 475 U.S. at 481 ("[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.").

With respect to the second theory, the Amended Complaint alleges that the actions taken by Nelson and Wortman "were undertaken pursuant to policies, protocols, and/or procedures authorized by Perry Township." Doc. #26, PageID#146. However, as Defendants point out, Plaintiffs do not identify any

particular policy, protocol or procedure. Nor do they explicitly allege that such

policy, protocol or procedure was the moving force behind the alleged

constitutional violation.

Defendants maintain that Plaintiffs' allegations constitute a threadbare legal

conclusion couched as a factual allegation and should be deemed insufficient under

*Twombly*. The Court agrees. *See, e.g., Wilson v. Trumbull Cty. Dep't of Job &*

*Family Servs.*, No. 4:12cv02163, 2013 WL 5820276, at *9 n.7 (N.D. Ohio Oct.

29, 2013) (acknowledging that, "in the absence of discovery, civil rights plaintiffs

face challenges in pleading the existence of a municipal custom or policy," but

holding that *Twombly* and *Iqbal* require more than a "perfunctory assertion of an

unspecified 'custom and practice.'").

Plaintiffs note that the Amended Complaint also alleges that Perry

Township's new police chief told Mr. Hora that "they have since changed their

approach to future boundary disputes, and would treat such disputes as civil

matters." Doc. #26, PageID#144. Plaintiffs argue that it can reasonably be

inferred from this allegation that the Township's previous "approach," *i.e.,* policy,

protocol or procedure, was the moving force behind the alleged procedural due

process violations.[5] The police chief's statement, however, is inadmissible to

_____

[5]   Plaintiffs also allege that, after Hora obtained the survey proving that the signs
were located on his land, the Township failed to take any corrective action. Doc.
#26, PageID##143-44. This is largely irrelevant, given that the failure to take
corrective action *after* the alleged due process violation occurred cannot logically
be the moving force behind that constitutional violation.

24

prove that the previous "policy or procedure" was unconstitutional.  Evidence of a subsequent remedial measure is not admissible to prove culpable conduct.  Fed. R. Evid. 407.

The Court finds that Plaintiffs have failed to state a plausible claim for relief against Perry Township.  The Court therefore SUSTAINS Defendants' Motion for Judgment on the Pleadings on Count IV, as asserted against Perry Township.

### 4.    Punitive Damages

Defendants have also moved to dismiss Plaintiffs' claim for punitive damages.  Under § 1983, punitive damages cannot be recovered against a municipality, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981).  Although punitive damages may be recovered against individuals, a plaintiff must show that a defendant's conduct was motivated by evil motive or a reckless or callous indifference to a federally-protected right.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Defendants argue that, because Plaintiffs have not alleged that Nelson's or Wortman's conduct rose to this level, they have failed to state a plausible claim for relief.  Again, Plaintiffs fail to respond to this argument, impliedly conceding that their claim for punitive damages is subject to dismissal.

The Court SUSTAINS Defendants' Motion for Judgment on the Pleadings with respect to the claim for punitive damages against Perry Township, Nelson and Wortman.

### C.    "Emotional Distress" Claim (Count V)

Count V of the Amended Complaint asserts a state law claim of "emotional distress" against all Defendants.  Plaintiffs allege that, as a result of Defendants' actions they were embarrassed and subjected to inquiries by customers about why the signs were removed.  Doc. #26, PageID#152.

The Court notes that Ohio does not recognize a cause of action for "emotional distress."  Plaintiffs do not specify whether they intend to assert a claim for *intentional* or *negligent* infliction of emotional distress.  Nevertheless, because claims of negligent infliction of emotional distress are available only to bystanders who witness an accident or are in fear of physical danger, *Kelly v. First Data Corp.*, No. 1:19-cv-372, 2020 WL 419440, at *9 (S.D. Ohio Jan. 27, 2020), the Court presumes that Plaintiff intended to assert a claim of intentional infliction of emotional distress.

In their Motion for Judgment on the Pleadings, Defendants argue they are statutorily immune under Chapter 2744 of the Ohio Revised Code.  They argued that Perry Township is immune from liability because the provision of police services is a governmental function and none of the immunity exceptions applies. *See also Grassia v. Cleveland*, No. 93647, 2010 WL 2206252, at *4 (8th Dist. June 3, 2010) ("Because Section 2744.02(B) includes no specific exceptions for intentional torts, courts have consistently held that political subdivisions are immune from intentional tort claims.") (internal quotation omitted).

26

Defendants also argue that Nelson and Wortman were statutorily immune because none of the exceptions set forth in Ohio Revised Code § 2744.03(A)(6) applies. By not responding to these arguments, Plaintiffs again impliedly concede that they cannot recover damages on this claim from Nelson, Wortman or Perry Township. The Court therefore DISMISSES Count V WITH PREJEUDICE as to these three Defendants.

## IV. Conclusion

For the reasons set forth above, the Court SUSTAINS IN PART and OVERRULES IN PART the Motion for Judgment on the Pleadings brought by Defendants Perry Township, Stephen Nelson, and William Wortman, along with Trustee Dale Seim, Montgomery County and the Perry Township Police Department. Doc. #30.

The § 1983 claims against Perry Township, Nelson and Wortman based on alleged violations of Plaintiffs' Fourth, Fifth and Sixth Amendment rights (Counts I, II, and III) are DISMISSED WITH PREJUDICE, as are the claims of "emotional distress" (Count V) and the claims for punitive damages.

To the extent that Plaintiffs have alleged violations of their Fourteenth Amendment procedural due process rights (Count IV), they may proceed with their § 1983 claims brought against Nelson and Wortman in their individual capacities. The due process claims against Perry Township, however, are DISMISSED WITH

27

PREJUDICE.  All claims brought against Nelson and Wortman in their official

capacities are DISMISSED as duplicative of the claims against Perry Township.

All claims against Defendant Rick Risner remain pending.

Date: August 13, 2020

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE