IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FRANKIE HORA, *et al.*,               :

        Plaintiffs,
                                      Case No. 3:18-cv-344
    v.                                :
                                      JUDGE WALTER H. RICE
RICK RISNER, *et al.*,

        Defendants.                   :

---

DECISION AND ENTRY OVERRULING MOTION FOR SUMMARY
JUDGMENT FILED BY DEFENDANTS STEPHEN NELSON AND
WILLIAM WORTMAN (DOC. #46); CONFERENCE CALL SET FOR
JUNE 9, 2021, AT 4:30 P.M. TO DISCUSS NEW TRIAL DATE AND
OTHER DATES

---

        Plaintiffs, Frankie and Mary Hora, along with their business, Tukens, LLC

(d/b/a Tukens Farm Market), filed suit against their neighbor Rick Risner and

against Perry Township, Perry Township Police Officer Stephen Nelson and

Sergeant William Wortman (the "Perry Township Defendants").  Plaintiffs sought

damages under 42 U.S.C. § 1983, for alleged violations of their Fourth, Fifth,

Sixth and Fourteenth Amendment rights under the United States Constitution.

They also brought a state law claim of "emotional distress."

        On August 13, 2020, the Court issued a Decision and Entry on the Perry

Township Defendants' Motion for Judgment on the Pleadings, dismissing all claims

against them except for the § 1983 Fourteenth Amendment procedural due

process claim brought against Defendants Nelson and Wortman in their individual capacities.[1]  Doc. #37.

This matter is currently before the Court on a Motion for Summary Judgment filed by Defendants Nelson and Wortman.  Doc. #46.  They argue that they are entitled to qualified immunity on that one remaining claim against them.

## I.    Factual Background

This case involves law enforcement officers' response to a property boundary dispute between neighbors.  Plaintiffs Frankie and Mary Hora own and operate the Tukens Farm Market, located on the north side of Eaton Pike in Perry Township near West Alexandria, Ohio.  For more than fourteen years, signs advertising the farm market were located on a triangular piece of land on the east bank of a creek that runs near the eastern edge of their property.

In the Spring of 2017, Defendant Rick Risner purchased the property immediately to the east of the farm market.  Given that Frankie Hora had also expressed an interest in purchasing this same property, Risner's purchase allegedly created some tension between them.  In October of 2017, Frankie Hora called the fire department to report that Risner was illegally burning debris.  Doc. #42, PageID#472.  Hora claims that Risner retaliated by falsely claiming ownership of

---

[1]   A claim brought against a government official in his individual capacity seeks to impose personal liability for alleged constitutional violations.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

the triangular piece of land on which the farm market signs were located (hereafter "the disputed property"). *Id.* at PageID#492.

The Horas could access the disputed property only by crossing Risner's property or by crossing through the creek. According to Frankie Hora, Risner had previously given him permission to enter onto his property to collect walnuts from a tree that was on the property boundary near the farm market signs. *Id.* at PageID##364-65.

On the morning of October 20, 2017, Risner contacted the Perry Township Police Department to file a complaint about an incident "which had occurred the day before." Officer Stephen Nelson, of the Perry Township Police Department, was dispatched to take Risner's statement. Risner claimed that Frankie Hora had been threatening to sue him if he did not agree to sell him his property, had reported him to the fire department, and was harassing him. Risner asked that Hora be arrested for trespassing if he entered onto his property. Doc. #48-1, PageID##897, 900; Doc. #44, PageID##633-34. Risner also told Officer Nelson that the farm market signs were located on his property, and he wanted Hora to remove them. Doc. #48-1, PageID#897. Risner told Nelson that the creek was the boundary between the two properties, and that the signs were located on his side of the creek. Doc. #44, PageID##639-40.

The parties have different recollections about what happened next, and some of the disputed facts are material. Because, on a motion for summary judgment on qualified immunity grounds, the Court must view the facts in the light

most favorable to Plaintiffs, it will rely primarily on Frankie and Mary Hora's depositions, noting Defendants' areas of disagreement where applicable.

The officers testified that Sergeant Wortman was also present when Officer Nelson took Risner's statement that morning. Doc. #43, PageID#586; Doc. #44, PageID#636. According to Wortman, while Officer Nelson was talking to Risner, Frankie Hora walked over to meet them. Wortman pulled Hora aside and explained to him that Risner wanted Hora to stop harassing him, to stay off of his property, and to remove the signs, which Risner claimed were located on his property. Wortman testified that Hora then showed him posts in the field on the east side of the creek, which Hora believed to be the property boundary. Wortman then allegedly told Hora that he was going back to the township building to look at maps of the area. Doc. #43, PageID##590-94; Doc. #44, PageID##663-64.

Frankie Hora, however, disputes this testimony, and flatly denies talking to either officer that morning. Doc. #42, PageID##299-304, 311. He testified that, at approximately 11:00 a.m. on October 20th, he was working in the fields when his wife, Mary, called him on his cell phone to tell him that Officer Nelson was at the farm market. Nelson had demanded to talk to Frankie, and told her that their signs were on a neighbor's property and had to be removed immediately. Mary was upset because Nelson had parked right in front of the store and interrupted her while she was waiting on customers. *Id.* at PageID##294-98; Doc. #45, PageID##763-68.

By the time Frankie returned from the fields to the farm market, Officer Nelson was no longer there. Frankie attempted to reach him by phone, but there was no answer. That afternoon, Frankie went to the Perry Township offices and told the receptionist that he was responding to a request that he contact Officer Nelson. Officer Nelson came to the lobby and told him that the farm market signs were on Risner's property. Doc. #42, PageID##294-302.[2] Nelson showed Hora the Perry Township zoning map and a plat map, which appeared to support Risner's claim that the signs were located on his property. *Id.* at PageID##333-34; Doc. #48-1, PageID#897; Doc. #44, PageID##643-44.[3]

According to Hora, Sergeant Wortman told him that if he did not remove the signs, the township would do it for him and bill him. The officers also allegedly told him that if he did not immediately remove the signs, he would be arrested and charged with trespassing. Doc. #42, PageID##303-04, 344, 365-66, 369-70.

Defendants deny threatening to arrest Hora if he refused to remove the signs that day. They admit, however, they told him that, if he had any belongings on

---

[2]  Officer Nelson's "Investigator Notes" indicate that Hora came to the police station at 2:34 p.m. that day to speak to him about the property dispute. Nelson wrote, "I informed him that the official zoning map shows his property line on the other side of the creek. I informed him that his neighbor, Rick Risner, wants him to remove his signs and [Hora] be trespassed from the property." Doc. #48-1, PageID#899.

[3]  Sergeant Wortman and Officer Nelson testified that Hora conceded that the zoning map appeared to show that the signs were located on Risner's property. Doc. #43, PageID#598; Doc. #44, PageID#655. Hora denies making any such concession. Doc. #42, PageID#345.

the disputed property, he needed to remove them that day, because he would be charged with trespassing if he entered onto Risner's property to retrieve them after that.[4]  Doc. #43, PageID##594, 601; Doc. #44, PageID##666-71.  Nelson and Wortman also testified that they advised Hora to obtain an official survey to determine the exact boundary line, but Hora disputes this.  Doc. #43, PageID#600; Doc. #44, PageID#667; Doc. #42, PageID##346-47, 354.

Although Hora disagreed with the officers about the property boundary, he agreed to remove the signs and other belongings from the disputed property. He claims that he agreed to do so only because he did not want to be arrested.  Doc. #42, PageID#355.  He asked that Officer Nelson come with him and remain present while he took photographs and removed the signs.  *Id.* at PageID#347. Wortman instructed Nelson to "go out and keep the peace and allow a window of time for which Hora could transverse across Mr. Risner's . . . property" to retrieve the signs.  Doc. #44, PageID##654-55.

According to Hora, Officer Nelson then followed him home.[5]  Doc. #42, PageID#372.  Hora attempted to show Nelson a property survey that had been

---

[4]  In addition to the signs, Hora also had a walnut bin and a tractor on the disputed property.  Doc. #42, PageID#379.

[5]  Officer Nelson testified that he arranged to meet Hora at the farm market parking lot.  Nelson maintains that he entered the farm market to look for him only because he did not see him outside.  Nelson denies going into the farm market earlier that morning.  Doc. #44, PageID##657-58, 664-65.

completed in 2003.[6]  *Id.* at PageID#331; Doc. #45, PageID##778-79.  Hora testified that he and Nelson then walked out to the disputed property.  Hora pointed out the steel posts located on the east side of the creek, which he claimed marked the property boundary.  Although Nelson allegedly agreed that the posts looked like they could be the property line, he stated that he was told to rely on the township zoning map.  Doc. #42, PageID##343-44, 375-76.

Hora took photographs of the disputed property, and then removed the signs and the walnut bin.  It is undisputed that Officer Nelson did not take possession of the signs.  Nor did he help Hora remove the signs or tell him where they should be relocated.  Nelson's only concern was making sure that Hora removed the signs from the disputed property.  *Id.* at PageID##395, 399-400.  A few days later, Hora repositioned the signs on the west side of the creek.

Hora testified that, on or about October 23, 2017, he returned to the Perry Township offices with Perry Township Trustee Dale Seim, armed with a map from the auditor's website, allegedly showing that the Horas owned the disputed property.  Seim told Nelson that the zoning map was inaccurate and should not be relied upon, but Nelson refused to change his stance.  *Id.* at PageID##316, 350-52, 373.

---

[6]  It appears to be undisputed that the 2003 survey did not clearly show where the creek passed through the property.  Accordingly, it would not have resolved the boundary dispute.

In November of 2017, Hora obtained a new survey of the property boundaries. Doc. #42, PageID#483. He testified that he concluded, on his own, that this would be the most appropriate course of action if he wanted to regain access to his land. *Id.* at PageID##347-48. The parties now agree that this survey shows that the disputed property on which the farm market signs had been located does, in fact, belong to the Horas. *Id.* at PageID#414.

On April 13, 2018, Hora provided the Perry Township Trustees with a copy of this new survey. He asked that the records regarding his property boundary and the records of the investigation be corrected, that he be reimbursed $750,000 for the denial of use of his property, that Risner be informed of the true property boundaries, and that he be permitted to erect the signs in their previous location. *Id.* at PageID#409. Hora, however, got no response from the township and, in an abundance of caution, he has never reentered the disputed property.[7]

## II.    Procedural History

On October 19, 2018, Frankie and Mary Hora filed suit against Rick Risner, Perry Township, Officer Nelson and Sergeant Wortman. An Amended Complaint, filed on November 15, 2019, sought relief under 42 U.S.C. § 1983 for alleged

---

[7]    Hora did later put a sign on the east bank of the creek, on what he claims is the "public right-of-way" rather than the disputed property. Doc. #42, PageID##432-37.

violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments, and asserted a state law claim of "emotional distress." [8]

The Perry Township Defendants filed a Motion for Judgment on the Pleadings. On August 13, 2020, the Court dismissed all claims against the Perry Township Defendants except for the § 1983 claim alleging procedural due process violations, brought against Nelson and Wortman in their individual capacities. The Court refused to grant qualified immunity to them at that juncture. Doc. #37. *See Watkins v. Healy*, 986 F.3d 648, 668 (6th Cir. 2021) (noting that it is generally inappropriate to grant a motion to dismiss on the basis of qualified immunity, because development of the factual record is typically required to determine whether the officer's actions violated clearly established law).

In denying Defendants' request for qualified immunity, the Court found that, by alleging that they were forced to remove the farm market signs from the disputed property without the opportunity to be heard, Plaintiffs had stated a plausible procedural due process violation, and that the law was clearly established such that a reasonable officer would have known that individuals are entitled to a meaningful opportunity to be heard prior to being deprived of the use of their property. Doc. #37, PageID##254-63.

---

[8]  The Amended Complaint alleges that, "with respect to the boundary dispute, Risner acted in concert with Nelson, Wortman and Perry Township." Doc. #26, PageID#146. This allegation could be interpreted to assert § 1983 claims not only against the Perry Township Defendants, but also against Risner. Given that Risner has not filed any dispositive motions, all claims against him remain pending.

III.    Defendants Stephen Nelson and William Wortman's Motion for Summary
        Judgment (Doc. #46)

Defendants Nelson and Wortman have now moved for summary judgment
on the one remaining claim.  Now citing deposition testimony, they again argue
that they are entitled to qualified immunity.  Doc. #46.  That motion is now fully
briefed.  *See* Docs. ##48, 50.

    A.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a
showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial
responsibility of informing the court of the basis for its motion, and identifying
those portions of the record which it believes demonstrate the absence of a
genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d
1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must
present evidence that creates a genuine issue of material fact making it necessary
to resolve the difference at trial."  *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241,
1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
250 (1986).  Once the burden of production has so shifted, the party opposing
summary judgment cannot rest on its pleadings or merely reassert its previous
allegations.  It is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal*

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## B. Relevant Law

### 1. 42 U.S.C. § 1983

In order to recover under 42 U.S.C. § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated a right secured by the Constitution or laws of the United States. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). It is undisputed that, at all relevant times, Officer Nelson and Sergeant Wortman were acting under color of state law. At issue is whether Defendants violated Plaintiffs' Fourteenth Amendment procedural due process rights when, prior to giving them a meaningful opportunity to be heard, Defendants ordered Plaintiffs to remove the signs from the disputed property.

### 2. Qualified Immunity

When defendants raise the defense of qualified immunity, plaintiffs bear the burden of showing that defendants are not entitled to it. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). As the Sixth Circuit has explained:

> The doctrine of qualified immunity generally shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity 'gives ample room for mistaken judgments [and protects] all but the plainly incompetent or those who knowingly violate the law.'" *Essex v. Cty. of*

12

*Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019). Qualified immunity applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).

In determining whether Defendants Nelson and Wortman are entitled to qualified immunity, the court follows a two-step inquiry.

> "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Seales v. City of Detroit, Mich.*, 724 F. App'x 356, 359 (6th Cir. 2018) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). This Court may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "If either prong is not met, then the government officer is entitled to qualified immunity." *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (citing *Courtright*, 839 F.3d at 518).

*Cahoo*, 912 F.3d at 897-98.

As explained in *Behrens v. Pelletier*, 516 U.S. 299 (1996), defendants may raise the defense of qualified immunity at multiple stages of the litigation. However, on a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" At the summary judgment stage, however, "the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff)." *Id.* at 309 (emphasis in original).

13

## C.   Analysis

### 1.   Constitutional Violation?

The first question is whether the facts, taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a federal right. *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). Plaintiffs allege that Defendants' conduct violated their procedural due process rights under the Fourteenth Amendment to the United States Constitution. This Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The procedural due process portion of this clause requires that, when a significant property interest is at stake, "the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation omitted).

In order to succeed on their procedural due process claim, Plaintiffs must establish three elements: "(1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." *Cahoo*, 912 F.3d at 900.

#### a.   Property Interest

Based on the survey conducted in November of 2017, Defendants now concede that Frankie and Mary Hora do, in fact, own the disputed property, *i.e.*, the triangular piece of land on which the farm market signs were located. The

question is whether the property interest at stake is one that is protected by the Due Process Clause.

The Court must first resolve a disagreement about the nature of the property interest at issue. Defendants argue that the only property interest at stake in this lawsuit is Plaintiffs' *personal property* interest in the signs themselves. In support, they cite to one line from the Court's Decision and Entry Sustaining in Part and Overruling in Part Defendants' Motion for Judgment on the Pleadings. Therein, the Court stated, "[i]t appears to be undisputed that Plaintiffs have a protected property interest in the signs used to advertise their farm market." The Court found that Plaintiffs had "adequately alleged that they were deprived of that property interest when Officer Nelson ordered them to immediately take down the signs." Doc. #37, PageID#257.

The Court's analysis, however, was not limited to a discussion of Plaintiffs' property interest in the signs themselves. It encompassed Plaintiffs' claim that they were deprived of their right to use their real property to advertise the farm market. The Court concluded that "it could be argued that, at the very least, due process required that, before Plaintiffs were forced to remove the signs, they be given the opportunity to hire a surveyor and present evidence to support their claim that the signs were not on Mr. Risner's property." *Id.* at PageID#259.

Moreover, nothing in the Amended Complaint limits the nature of the property interest at issue to personal property, *i.e.,* the signs. In fact, the Amended Complaint alleges that Plaintiffs "were wrongfully deprived of the use of

their Property."  Doc. #26, PageID#148, at ¶ 61.[9]  The Amended Complaint

defines "the Property" not as the signs, but rather as the real property located at

15725 Eaton Pike, Doc. #26, PageID#140, at ¶4.

In addition, in their Motion for Summary Judgment, Defendants state that

"Plaintiffs' protected property interest is in the *placement* of the signs to advertise

their market."  Doc. #46, PageID#846 (emphasis added).  For these reasons, the

Court rejects Defendants' later attempts to limit the property interest at stake to

the signs themselves.  The property interest at stake clearly encompasses the real

property that is the subject of this dispute.

Property interests arise from state law.  *Cleveland Bd. of Educ. v.

Loudermill*, 470 U.S. 532, 538 (1985).  Under Ohio law, ownership of real

property carries with it a bundle of rights, including the right to freely use and

enjoy the property.  *Antonik v. Chamberlain*, 81 Ohio App. 465, 472–73, 78

N.E.2d 752, 758 (Ohio Ct. App. 1947) ("The chief characteristic of ownership is

the right to complete dominion, and when ownership is applied to land it means

the land itself and what pertains to it, and the right for the time being to possess

and enjoy it.").  In addition, Ohio law permits outdoor advertising on "lands used

for agricultural purposes."  Ohio Rev. Code § 519.20.

---

[9]  Although ¶ 61 is part of Count II (the Fifth Amendment claim), Count IV (the
Fourteenth Amendment claim) incorporates it "as if fully restated and realleged
herein."  Doc. #26, PageID##150-51, ¶ 76.

16

Based on the foregoing, the Court rejects Defendants' argument that the property interest at issue is *de minimis* and, therefore, not constitutionally protected. *See, e.g., Kennedy v. City of Cincinnati*, 595 F.3d 327, 335 (6th Cir. 2010) (holding that a protected property interest generally must be more than a *de minimis* interest). From a constitutional standpoint, Plaintiffs' interest in being able to freely use this portion of their real property cannot be deemed *de minimis*. *See Burden v. Ohio Dep't of Job & Fam. Servs.*, 2012-Ohio-1552, 2012 WL 1139164, ¶ 27 ("The rights to acquire, use, and dispose of property are essential attributes of private property ownership and are protected by due process.").[10]

The Court finds, as a matter of law, that Plaintiffs have a protected property interest not only in the signs themselves but, more importantly, in the real property on which they were located.

### b. Deprivation of Property Interest

The next question is whether Plaintiffs were deprived of their protected property interest. Defendants note that they never took physical possession of the signs. They argue that, because Frankie Hora voluntarily agreed to remove the

---

[10] Defendants also argue that, because this incident occurred near the end of the farm market's season, any deprivation of a property interest was *de minimis*. Mary Hora testified, however, about the importance, in terms of visibility for passing motorists, of having the advertising signs on that particular triangular piece of property. Doc. #45, PageID##789-92. Plaintiffs presented evidence that, in October of 2017, when the signs were removed for several days, the farm market's revenues dropped by nearly $8,000 from the same month the previous year. Doc. #42-3, PageID##568, 571.

signs from the disputed property and repositioned them just a few days later, it cannot be said that Plaintiffs were ever deprived of their property interest in the signs themselves. This may be true.

Nevertheless, viewing the evidence in a light most favorable to the Plaintiffs, the Court finds that a reasonable jury could find that Defendants deprived them of their property interest in the disputed real property, *i.e.,* the triangular piece of land on the east side of the creek. According to Hora's testimony, the officers told him that he would be arrested if he did not remove the signs that day, and that if he refused to do so, the township would do it for him and send him the bill. As such, a reasonable jury could find that Hora did not "voluntarily" remove the signs, and that the officers deprived Plaintiffs of their right to use and enjoy their own property, including their right to place advertising signs on it.

### c.    Adequate Pre-Deprivation Procedural Rights

The next question is whether a reasonable jury could find that, given the circumstances, Plaintiffs were afforded adequate due process protections prior to being deprived of their protected property interest. The amount of process that is due depends on the facts of each case. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands."). Although procedural due process protections are required in cases involving deprivations of personal property, such protections are even more important in cases involving deprivations of real property.

In determining what process is owed, the court applies the three-part balancing test set forth in *Mathews v.* Eldridge, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, the private interest at stake is the right of Plaintiffs to freely use their real property as they wish, including the right to place advertising signs on it. The Court must next consider the risk that, through the procedures actually used, Defendants would make an erroneous determination about who owned the disputed property, and the probable value of additional or substitute safeguards.

Notably, the farm market signs had been in the same location without incident for approximately fourteen years. It was only after Risner purchased the property next door that anyone challenged ownership of the land on which they were located. To their credit, Nelson and Wortman did not rely solely on Risner's claim to the disputed property; they also looked at the zoning map and the plat map, which they maintain supported Risner's claim of ownership.

However, the accuracy of these maps for determining property boundaries is questionable. Wortman testified that Township Trustee Dale Seim told them that the zoning map was old, Doc. #43, PageID##599-600, and, according to Frankie

Hora, Seim also told the officers that it should not be used. Doc. #42, PageID#340. Moreover, the zoning map and plat map appear to be inconsistent with the document obtained from the auditor's website, which Hora and Seim showed the officers on October 23rd. *Id.* at PageID#350. It therefore appears that using the zoning map and plat map to determine the property boundary resulted in a fairly high risk of an erroneous determination of ownership.

Of course, a property boundary survey would have provided a definitive answer as to who owned the disputed property. Officer Nelson testified that the township would have respected the results of an official survey. Doc. #44, PageID#667. As previously discussed, Hora denies that the officers recommended that he have a survey done to determine the true property boundary.

In any event, instead of waiting for Hora to obtain a survey, Defendants— relying solely on the zoning map, the plat map, and Risner's claim of ownership— determined that Risner owned the disputed property. Nelson's narrative supplement states that he "found that not only were Hora's signs on Rick's property, but the property line was on the other side of the creek." Doc. #48-1, PageID#897. According to Hora, this determination was made *before* he was given any opportunity to show the officers the steel posts that he maintains marked the true property boundary. He testified that "they expressed as a statement of fact that I was on [Risner's] property." Doc. #42, PageID#347. Hora maintains that, when he went to the township offices that afternoon,

Defendants told him that he would be arrested and charged with trespassing unless he immediately removed the signs from the disputed property.

Finally, the Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In this case, there is no evidence that giving Plaintiffs the opportunity to obtain a property survey prior to ordering them to remove the signs from the disputed property would have imposed any fiscal or administrative burdens on the township.

Moreover, making a unilateral decision about who owned the disputed property is arguably contrary to paragraph 14(a) of the Perry Township Police Department Operation Guidelines. That paragraph states, "[m]embers shall avoid entering into civil disputes, particularly while performing their police business, but shall prevent or abate a breach of peace or crime in such cases. They shall avoid making determinations on . . . a disposition of property absent court documents to support said decision." Doc. #44-1, PageID#702. It is undisputed that, at the time Plaintiffs were ordered to remove the signs from the disputed property, there were no court documents showing that the property at issue belonged to Rick Risner.

Defendants now argue, however, that it was necessary for them to make an immediate determination about who owned the disputed property to avert a breach of peace. Wortman testified that, from past experience, he knew that neighbor disputes involving Frankie Hora "could get loud and disorderly." Doc. #43,

21

PageID#588. Risner reported to Officer Nelson that Hora had been harassing him and threatening to sue him if he did not sell him his property. Defendants maintain that, because this was a volatile situation, they had act quickly to abate a breach of peace.

A reasonable jury could find otherwise. Frankie Hora may not have been pleased that Risner bought the property next door, and Hora admittedly called the fire department a few days earlier to report Risner's unauthorized burning of debris. Hora also threatened to sue Risner. There is no evidence, however, that Hora had ever physically threatened Risner. Likewise, there is no evidence that Risner had made any previous complaints about Plaintiffs. In short, although there may have been some animosity between these two neighbors, any risk of immediate civil unrest is speculative at best.

Notably, Risner waited until mid-morning on the day after the incident in question to call the police department. *See* Doc. #48-1, PageID#893. This delay appears to belie any sense of urgency. Likewise, Nelson's narrative supplement to his investigative report does not convey any fear of an immediate breach of peace. He wrote that, after speaking to Risner, he researched the property boundaries and determined that the signs were on Risner's property. He wrote that he would attempt to notify Hora "at a later time." *Id.* at PageID#897. Based on these facts, a reasonable jury could reject Defendants' claim that they needed to make a quick determination of property ownership in order to prevent a breach of the peace.

Based on all of the foregoing, the Court concludes that, under the three-part balancing test set forth in *Mathews v. Eldridge*, a reasonable jury could find that Plaintiffs were not afforded adequate due process protections prior to being deprived of their protected interest in the disputed property.

Having found that the facts, taken in the light most favorable to Plaintiffs, support a finding that Defendants' conduct violated Plaintiffs' Fourteenth Amendment procedural due process rights, the next step in the qualified immunity analysis is whether the law was clearly established.

### 2.  Clearly Established Law?

In *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014), the Supreme Court held that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."

In determining whether the law was clearly established, the Court looks first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and then to decisions of other federal appellate courts. *Andrews v. Hickman Cty.,* 700 F.3d 845, 853 (6th Cir. 2012). Although the conduct at issue in those cases need not be identical, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). *See also Baker v. Union Twp.*, 587 F. App'x 229, 233 (6th Cir. 2014) (noting that the right at issue should not be defined at "a high level of generality," but neither should it be defined so narrowly to require the

"circumstances of the alleged violation" to be "identical to cases already decided.").

In its Decision and Entry on the Perry Township Defendants' Motion for Judgment on the Pleadings, the Court held that the law was clearly established such that reasonable officers standing in the shoes of Defendants would have known that their conduct, in ordering Plaintiffs to remove the signs prior to notice and a hearing, was unconstitutional.[11]  Doc. #37, PageID##259-63.  It noted that the Third Circuit, in *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), held that "it is not for law enforcement officers to decide who is entitled to possession of property.  Rather, it is the domain of the courts, and citizens are to have a meaningful opportunity to be heard as to their rights before they are finally deprived of possession of property." *Id.* at 149 (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)).  The Court finds no reason to revisit that analysis in any detail.

Defendants argue that *Abbott* is distinguishable because the plaintiff in that case was given no opportunity to prove rightful ownership of the vehicle before the officers determined that it belonged to his ex-wife and ordered him give her

_____

[11]  Defendants again argue that they are entitled to qualified immunity because they made a "reasonable mistake of fact" when they determined that the farm market signs were located on Risner's property.  However, as the Court noted in its previous Decision and Entry, Doc. #37, PageID#262 n.4, the relevant question is not whether Defendants made a reasonable mistake in determining property boundaries, but whether they made a reasonable mistake in ordering the removal of the signs from the disputed property without notice and a meaningful opportunity to be heard.

possession of it. However, viewing the evidence in the light most favorable to Plaintiffs herein, Defendants fare no differently. Hora testified that the officers determined that Risner owned the disputed property and ordered Hora to remove the signs prior to giving him any opportunity to prove that he owned the land.

Defendants further argue that *Abbott* is distinguishable because the officers in that case made a *final determination* concerning who was entitled to possession of the vehicle. According to Defendants, in this case, they did not "forever ban Plaintiffs from their real property." Doc. #46, PageID#853. They gave Hora the opportunity to present a boundary survey to fully resolve the issue. As previously noted, however, Hora denies that Defendants presented him with this option.

Moreover, even after he submitted a copy of his November 2017, survey and asked township officials to acknowledge that he owned the disputed property, to correct the records of the investigation, to inform Risner of the survey results, and to grant him (Hora) permission to erect the signs in their previous location, he received no response. Doc. #42, PageID#409. With the alleged ongoing threat of arrest hanging over his head, Hora, in an abundance of caution, has not reentered the disputed property. As a practical matter, therefore, it could be said that he is still being deprived of the use of his property.

Defendants cite to two other cases in support of their argument that Plaintiffs' rights were not clearly established— *Wessendarp v. Berling,* No. 1:12-cv-559, 2013 WL 3353886 (S.D. Ohio July 3, 2013), and *Skovgard v. Pedro*, 448 F. App'x 538 (6th Cir. 2011). These two unreported cases, however, involved

claims of *criminal trespass*. They are, therefore, irrelevant. Plaintiffs note that they do not argue that Defendants violated their due process rights when they threatened to arrest them if they crossed over Risner's land to reach the disputed property after the date in question. All agree that the mere presence of Horas' *personal* property, *i.e.,* the farm market signs, on the disputed *real* property would not give rise to a claim of criminal trespass. In the instant case, the relevant question is whether Defendants had to give Plaintiffs notice and a meaningful opportunity to be heard prior to determining that Risner owned the disputed property and ordering Plaintiffs to remove their signs. Per *Abbott*, a reasonable officer standing in Defendants' shoes would have known that their conduct violated Plaintiffs' clearly established rights. [12]

Accordingly, Defendants Stephen Nelson and William Wortman are not entitled to qualified immunity on the Fourteenth Amendment procedural due process claims brought against them in their individual capacities.

_____

[12] *Wessendarp* involved a plaintiff who claimed to have a life membership at a golf club. Following an incident involving a female vendor, he was told by the manager that he was no longer welcome. When he returned anyway, the manager called the police, who threatened to arrest him for criminal trespass. He sued the officers, alleging a due process violation. In *Skovgard*, plaintiffs were arrested for criminal trespass at an abortion clinic after police officers mistakenly determined that plaintiffs were on private property rather than on the public right-of-way adjacent to the clinic.

## IV.    Conclusion

For the reasons set forth above, the Court OVERRULES Defendants Stephen

Nelson and William Wortman's Motion for Summary Judgment, Doc. #46.

The Court will hold a conference call on June 9, 2021, at 4:30 p.m. to

discuss a new trial date and other dates.


Date: May 24, 2021

WALTER H. RICE
UNITED STATES DISTRICT JUDGE